IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| DAMARIS A. VÁZQUEZ-PAGÁN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MIGUEL BORGES-RODRÍGUEZ, et al.,<br><br>Defendants. | CIVIL NO.: 12-1972 (MEL) |

**OPINION AND ORDER**

**I.   PROCEDURAL HISTORY**

On September 23, 2014, the court filed an opinion and order granting in part and denying in part a motion for summary judgment filed by Miguel Borges-Rodríguez ("Borges-Rodríguez") and Elin Cintrón-González ("Cintrón-González") (collectively "defendants"), dismissing all claims in this case with the exception of plaintiff Damaris Vázquez-Pagán's ("Vázquez-Pagán") political discrimination claim filed pursuant to 42 U.S.C. § 1983, regarding the failure to hire her to the School Director position at the Agustín-Ortiz school ("Agustín-Ortiz") based on interviews that took place on August 3, 2012. ECF No. 56. On October 2, 2014, defendants moved for reconsideration of the partial denial of summary judgment, seeking a full dismissal of the case of caption. ECF No. 63. On October 6, 2014, Vázquez-Pagán and her minor child K.F.V. (collectively "plaintiffs") moved for the court to reconsider the dismissal of K.F.V.'s derivative claim brought pursuant to P.R. Laws Ann. tit. 31, § 5141 ("Article 1802"). ECF No. 65. Pending before the court are the parties' motions for reconsideration, their responses in opposition, and defendants' reply. ECF Nos. 63; 64; 65; 66; 71.

II.  DISCUSSION

   A.  Political Discrimination

   1.  *Prima Facie* Case

In the opinion filed on September 23, 2014, the court found that Vázquez-Pagán met her burden of establishing a *prima facie* case of political discrimination, including that she had produced sufficient evidence for a reasonable jury to find that political animus was a substantial or motivating factor in the decision to appoint Olga Arroyo-García ("Arroyo-García") in favor of Vázquez-Pagán. Defendants argue that Vázquez-Pagán has not produced sufficient evidence regarding what factors the Secretary of Education considered in appointing Arroyo-García or that the three-person Interview Committee was influenced by Cintrón-González's political animus in reaching its unanimous recommendation for Arroyo-García.[1] ECF Nos. 63; 71. They assert that it was plaintiff's burden to adduce additional evidence and if the case proceeds to trial based on the

---

[1] Defendants also seek for the court to reconsider its decision that Vázquez-Pagán has met her burden with respect to showing that an adverse employment action occurred. ECF No. 63, at 10. They once again urge the court to apply the decision of Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 23 (1st Cir. 2002) to find that the denial of the School Director position at Agustín-Ortiz was not an adverse employment action. Id. Defendants are correct that although Marrero was decided in the Title VII context, it may nonetheless be persuasive as to what constitutes an adverse employment action in a political discrimination case such as the case of caption. As explained in the court's original opinion, however, Marrero involves the standard for determining an adverse employment action when an employer transfers or reassigns and employee against his will. 304 F.3d at 23. It holds that "a transfer or reassignment that involves only minor changes in working conditions normally does not constitute an adverse employment action." Id. By contrast, this case involves an employee who sought and applied for a new position that did not entail an increase in salary or a new job title or description. In finding the denial that plaintiff's application for a School Director in a different location could constitute an adverse employment action, the court relied in Rutan v. Republication Party, in which the Supreme Court of the United States found that denials of promotions, transfers, or rehires on the basis of political affiliation violates the First Amendment. ECF No. 56, at 16 (citing 497 U.S. 62 (1990)). Defendants have not brought anything to the court's attention to suggest that "shorter commuting hours" are in fact a benefit that can be denied on the basis of political affiliation, notwithstanding the Supreme Court's decision to the contrary. Defendants point out that in a letter plaintiff composed to Borges-Rodríguez on January 26, 2011 Vázquez-Pagán stated that she had been requesting to be relocated to Jayuya for eight years but such requests were futile even though she received the highest points in the interview process. ECF No. 63, at 11. Assuming for argument's sake that the contents of the letter are true, they do not suggest that Vázquez-Pagán did not suffer an adverse employment action when she was denied the School Director position at Agustín-Ortiz after the interviews on August 3, 2012. In light of the holding in Rutan the decision that Vázquez-Pagán has aduced sufficient evidence to meet the adverse employment action prong stands.

2

evidence in the summary judgment record then the jury will be forced to impermissibly speculate as to these two theories.

Defendants' arguments compel a closer examination of the requisite causation standard for a *prima facie* case of political discrimination. As stated by the First Circuit Court of Appeals, the causation analysis asks "whether a plaintiff was denied, or banished from, public employment for political reasons" and "requires the plaintiff to show that political affiliation was a substantial or motivating factor in the decisional calculus." Gómez v. Rivera Rodríguez, 344 F.3d 103, 110 (1st Cir. 2003) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). In Staub v. Proctor Hosp., the United States Supreme Court elaborated on what constitutes a "motivating factor in the employer's action" in employment discrimination cases involving cases in which the ultimate decisionmaker lacks discriminatory animus, but is influenced by the discriminatory animus of a supervisor who is not charged with making the ultimate employment decision.[2] 131 S.Ct. 1186 (2011) ("An employer's authority to reward, punish, or dismiss is often allocated among multiple agents. The one who makes the ultimate decision does so on the basis of performance assessments by other supervisors.").

---

[2] The Supreme Court referred to what other courts have deemed "cat's paw" liability:

> The term 'cat's paw' derives from a fable conceived by Aesop, put into verse by La Fontaine in 1679, and injected into the United States employment discrimination law by Posner in 1990. In the fable, a monkey induced a cat by flattery to extract roasting chestnuts and leaves the cat with nothing.

131 S.Ct. at 1190 n.1 see also Bishop v. Ohio Dep't of Rehabilitation and Corrections, 529 Fed.Appx. at 696 (6th Cir. 2013) ("When an adverse . . . decision is made by a supervisor who lacks impermissible bias, but that supervisor was influenced by another individual who was motivated by such bias, this Court has held that the employer may be held liable under a 'rubber-stamp' or 'cat's paw' theory of liability.") (citing, *inter alia*, Staub, 131 S.Ct. 1186 (2011)); Gee v. Principi, 289 F.3d 242, 346 (5th Cir. 2001) (finding "when the person conducting the final review serves as the 'cat's paw' of those who were acting from retaliatory motive, the causal link between the protected activity and adverse employment action remains intact.") and Yong Li v. Reade, 746 F. Supp. 2d 245, 251 (D. Mass. 2010) ("The 'cat's paw' theory was developed to prevent employers from evading liability 'through willful blindness as to the source of reports and recommendations.'") (citation omitted).

In Staub, the Supreme Court instructed that general tort-law principle of proximate causation applies to the analysis of whether something is a motivating factor in a particular adverse employment action.³ See Staub, 131 S.Ct at 1187-88 (citations omitted). It noted that "[a]nimus and responsibility for the adverse action can both be attributed to the earlier agent . . . if the adverse action is the intended consequence of that agent's discriminatory conduct." 131 S.Ct. at 1192. The elaboration on what constitutes a motivating factor from Staub sheds light on plaintiff's burden with regard to the substantial or motivating factor causation prong. Staub explains that "[p]roximate cause requires only 'some direct relation between the injury asserted and the injurious conduct alleged." Staub, 131 S.Ct. at 1192 (quoting Hemi Grp., LLC v. City of New York, 559 U.S. 1 (2010)). Proximate cause "[e]xcludes only those 'link[s] that are too remote, purely contingent, or indirect.'" Id. (quoting Hemi Grp., 559 U.S. at 1). Furthermore, the Supreme Court explicitly noted that "it is axiomatic under tort law that the decisionmaker's exercise of judgment does not prevent the earlier agent's action from being the proximate cause of the harm. Nor can the ultimate decisionmaker's judgment be deemed a superseding cause of the harm." Id. That is, the decisionmaker's discretion does not "render[] the link to the supervisor's bias remote or purely contingent." Id. (internal citations omitted). Instead, as it is

---

³ Staub was decided in the context of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), which "provides that liability is established 'if the person's membership [in a uniformed service] . . . is a motivating factor in the employer's action.'" 131 S.Ct. at 1187 (citing 38 U.S.C. § 4311(a)). Staub has been applied in the Title VII context, which also requires a plaintiff to show that discriminatory animus was a motivating factor in a particular adverse employment action. See e.g., Chattman v. Toto Tnax Am., Inc., 686 F.3d 339, 351 (6th Cir. 2012) ("While Staub dealt with a discrimination claim pursuant to [USERRA] the Court's reasoning applied with equal force to claims brought under Title VII. Both employ a 'motivating factor' standard of causation.") (citing 38 U.S.C. § 4311(a); 42 U.S.C. § 2000e-2(m)). In contrast, in age discrimination cases "[b]ecause the ADEA requires a 'but-for' link between the discriminatory animus and the adverse employment action as opposed to showing that the animus was a 'motivating factor' in the adverse employment decision" it has been found that "Staub's 'proximate causation' standard does not apply to cat's paw cases involving age discrimination." Sims v. MVM, Inc., 704 F.3d 1327, 1336 (11th Cir. 2007). Like USERRA and Title VII, First Amendment political discrimination cases employ a "motivating factor" standard of causation, rendering Staub's elaboration on that standard applicable and persuasive in the case of caption. See Cook v. IPC Int'l Corp., 673 F.3d 625, 628-29 (7th Cir. 2012) ("As for 'motivating factor' causation, that's an allusion to a doctrine that the Supreme Court in Mt. Healthy City School District Board of Education v. Doyle, created for use in civil rights suits alleging violations of the First Amendment, and that Congress added to Title VII . . .") (citations omitted).

"common for injuries to have multiple proximate causes . . ." both the supervisor's biased action and the decisionmaker's exercise of judgment can be "proximate cause[s] of the employment decision." Id.

With regard to the uncontested fact that the Secretary of Education makes the ultimate decision about which candidate to appoint as School Director, the principles discussed in Staub are directly applicable to the instant case. As a preliminary matter, there is evidence in the summary judgment record from which a rational jury could find that Cintrón-González intended to use whatever influence he had to cause Arroyo-García to be appointed at the expense of Vázquez-Pagán, because of their respective political affiliations. Staub illustrates that even if the Secretary of Education exercised his or her own judgment in selecting Arroyo-García rather than Vázquez-Pagán, that exercise of judgment would not necessarily sever the causal link between Cintrón-González's politically-motivated recommendation and the choice to appoint Arroyo-García. As noted in the opinion denying in part summary judgment, the record contains evidence that prior to the August 3, 2012 interviews Cintrón-González intended to "name" Arroyo-García to the School Director position at Agustín-Ortiz. He served as the Regional Director's delegate on the Interview Committee for that position, the Interview Committee recommended Arroyo-García for the position, and the Secretary of Education ultimately appointed her to the position. To establish a *prima facie* case of political discrimination, a plaintiff need not evince that political animus was the determining factor in a decision, but rather that it was a substantial or motivating factor. Since Arroyo-García was the only candidate recommended it is indeed foreseeable that she was the candidate ultimately appointed. From this evidence, even in the absence of testimony as to the Secretary of Education's particular considerations it cannot be said

that no reasonable jury could find that Cintrón-González's role or influence was not a proximate cause—i.e. a motivating factor—in Arroyo-García's appointment.

The more difficult question with respect to causation pertains to the fact that the recommendation for Arroyo-García was rendered by a three-person Interview Committee, which based on the evidence before the court appears to have made a unanimous recommendation for Arroyo-García. See ECF No. 47-11. It is uncontested that the Interview Committee may recommend up to three candidates to the Secretary of Education for the School Director position. ECF Nos. 32-1, ¶ 19; 40-1, ¶ 19. As defendants indicate, the evidence in the record suggests that Regional Director has a 50% vote as to the recommendation(s) made by the Interview Committee and the vote of the other two members of the Interview Committee, the parent's representative and the teacher's representative, is each worth 25% of the total. ECF Nos. 56, at 6 n. 7; 63, at 7.  Defendants are correct in their assertion that the representative of the Regional Director cannot "bypass" the vote of the other two members of the committee if they are in agreement—that is, the Regional Director does not have a majority vote on the committee. Thus, guided by the proximate cause analysis elaborated on in Staub, the first question is whether the fact that the Interview Committee was comprised of three members, with the vote of the other two members carrying equal weight to that of Cintrón-González as representative of the Regional Director, "automatically renders the link to [Cintrón-González's] bias 'remote' or 'purely contingent.'" 131 S.Ct. 1186 (2011). As previously noted, it is possible for injuries to have numerous proximate causes. Even assuming for argument's sake that the other two members of the Interview Committee recommended Arroyo-García for reasons unrelated political animus, or in other words because they each thought she was the "best candidate" based on permissible and relevant considerations and that Cintrón-González did not coerce or strong-

arm the unanimous recommendation, the same would not serve to render Cintrón-González's bias too remote to serve as a proximate cause. A reasonable inference can be made that both the supervisor's and other Interview Committee members' recommendations were made with the intent that they be used by the Secretary of Education in forming his appointment decision and that Cintrón-González's intent was politically motivated. The jury could infer that the supervisor's recommendation, the other Interview Committee members' recommendations, and the Secretary of Education's exercise of judgment were all concurrent causes of the decision to appoint Arroyo-García. Although the Regional Director only held 50% of the voting power, the summary judgment record does not evince that the vote of the other two members was a superseding cause of Arroyo-García's appointment. As stated in Staub, "[a] cause can be thought 'superseding' only if it is a 'cause of independent origin that was not foreseeable.'" 131 S.Ct at 1192 (citing Exxon Co. U.S.A. v. Sofec, Inc., 517 U.S. 830, 837 (1996)). As with regard to the exercise of judgment by the Secretary of Education, the exercise of judgment by other two members of the Interview Committee in signing a recommendation for Arroyo-García does not meet this standard for severing the causal link between Cintrón-González's approval of the recommendation and the decision to appoint Arroyo-García.

  Additionally, plaintiffs' theory of the case is that the interviews held on August 3, 2012 were "pro forma," such that Cintrón-González actually possessed even greater influence over which candidate was appointed than a 50% vote on an Interview Committee that made a non-binding recommendation. ECF No. 1, at 4. They allege that "[o]n August 3, 2012, the Department of Education held pro forma interviews for the Jayuya position, which required that there be an Interview Committee with a representative of the school's parents" and have repeated this theory in the initial scheduling conference memorandum and in the proposed pretrial order.

ECF Nos. 1, ¶ 3.16; 17, at 2; 49, at 3. Plaintiffs have brought forth evidence that prior to the August 3, 2012 interviews Borges-Rodríguez said "he had to follow instructions and that there was another person *already* for" the School Director position at Agustín-Ortiz and that Cintrón-González said "[t]hat he had to *name* the electoral commissioner [Arroyo-García] for his candidate that was doing that political campaign . . .," and that he always told Carlos Escobales-Pérez "that the person that was going to be *named* for that position was Olga Arroyo." ECF No. 40-3, at 4, 10 (emphasis added). Additionally, If a jury finds these statements to be credible, they could infer that although on paper the Secretary of Education had complete discretion regarding who to name or appoint to the School Director position, in reality the Regional Director, Borges-Rodríguez, and his delegate, Cintrón-González, carried substantial weight as to which candidate would be "named" to the position. Furthermore, plaintiffs have pointed to evidence that the Interview Committee for the August 3, 2012 was not properly composed in accordance with the Department of Education's official procedures for selecting a School Director. In reaching its decision regarding Vázquez-Pagán's complaint about the interview process, the Review Committee found that María Ortiz Pérez, who sat on the Interview Committee in representative of the parents of the School Council "in fact, [did] not represent the parents of the School Council." ECF No. 47-13, at 10. Accordingly, the Review Committee recommended that the Department of Education rescind Arroyo-García's appointment in part because the "interview and recommendation of candidates for the final selection by the Secretary was contrary to law." Id. For purposes of summary judgment, it is uncontested that Vázquez-Pagán challenged the appointment of Arroyo-García after the August 3, 2012 interviews to the Review Committee in part because the Interview Committee "was not duly composed, since the representative for the parents was not an authorized representative" and that the Review Committee agreed with

Vázquez-Pagán's challenge in recommending Arroyo-García's appointment be rescinded. ECF Nos. 32-1, ¶ 30; 40-1, ¶ 30. Viewed in the light most favorable to plaintiffs, a reasonable jury could credit this as additional evidence that the August 3, 2012 interviews were pro forma, as alleged by plaintiffs.

Overall, Cintrón-González was placed on the Interview Committee precisely so that he could make a recommendation as to which candidate should be awarded the School Director position. A reasonable jury could find that in signing off on a recommendation for Arroyo-García he did have such an effect and if the ample evidence as to his political bias is credited, find that political animus was a substantial or motivating factor.[4] Drawing all reasonable inferences in favor of plaintiffs, from Cintrón-González's own statements implying that he could influence which candidate was "named" a rational factfinder might infer that his recommendation of Arroyo-García, which carried 50% of the weight, had a causal link with the adverse employment action in question regardless of whether the other two members of the Interview Committee— one of whom was not an authorized representative—recommended the same candidate, as well. Defendants are free to argue to the jury that without additional evidence regarding the Secretary of Education's decision, the inner workings of the Interview Committee, or whether the other two members were influenced by political animus in any way Vázquez-Pagán has not shown that Cintrón-González's biased influence was a substantial or motivating in the adverse employment action in question. However, viewing the evidence in the light most favorable to plaintiffs, as is

---

[4] In their motion for reconsideration, defendants argue for a second time that the uncontested fact that Cintrón-González gave Vázquez-Pagán a score of 98 out of 100 based on the second round of interviews conducted on December 14, 2012 shows that he was not acting out of discriminatory animus. ECF No. 63, at 7. As mentioned in the September 23, 2014 opinion, the more relevant consideration is the score that he gave Vázquez-Pagán relative to that which he gave Arroyo-García—that is, 100 out of 100. ECF No. 56, at 24, 25. Moreover, the summary judgment record does not contain the scores Cintrón-González awarded either candidate based on the August 3, 2012 interviews and it is possible that they were different from those awarded based on the interviews conducted on December 14, 2012.

required at the summary judgment stage, it cannot be said that no reasonable jury could find Vázquez-Pagán has met her causation burden.

### 2. Mt. Healthy Defense

Defendants contend that the court incorrectly imposed a burden upon them "to prove that the Secretary of Education was not motivated by a politically discriminatory animus when she took the decision to prefer one candidate over the Plaintiff after the August 3, 2012 interview." ECF No. 63, at 1. As described in Acevedo-Díaz v. Aponte:

> [U]nder the Mt. Healthy burden-shifting mechanism applicable to a First Amendment political discrimination claim, the *burden of persuasion itself passes to the defendant-employer* once the plaintiff produces sufficient evidence from which the fact finder can infer that the plaintiff's protected conduct was *a* 'substantial' or 'motivating' factor behind [the adverse employment action]. Accordingly, once the burden of persuasion shifts to the defendant-employer, the plaintiff-employee will prevail unless the fact finder concludes that the defendant has produced enough evidence to establish that plaintiff's [adverse employment action] would have occurred in any event for nondiscriminatory reasons.

1 F.3d 62, 67 (1st Cir. 1993) (emphasis in original); see also Welch v. Ciampa, 542 F.3d 927, 941 (1st Cir. 2008) ("In Title VII cases a plaintiff is required to come forward with affirmative evidence that the defendant's nondiscriminatory reason is pretextual. In a political discrimination case the defendant bears the burden of persuading the factfinder that its reason is credible.") (internal quotation marks and citations omitted). Accordingly, in a political discrimination case the defendant must "demonstrate that (i) they would have taken the same action in any event; and (ii) they would have taken such action for reasons that are not unconstitutional." Vélez-Rivera v. Agosto-Alicea, 437 F.3d 145, 152 (1st Cir. 2006) (citing Mt. Healthy, 429 U.S. at 286-87).

As discussed above, Vázquez-Pagán has brought forth sufficient evidence from with a rational jury could infer that her political affiliation was a substantial or motivating factor for the

adverse employment action. As noted in the original opinion because Vázquez-Pagán has met her burden of establishing a *prima facie* case of political discrimination regarding the August, 2012 interview and selection process, the burden of persuasion shifts to defendants to establish a Mt. Healthy defense. ECF No. 56, at 23. Defendant repeatedly state that they are not required to "negate facts" in order to obtain summary judgment. ECF No. 71, at 4, 6. While defendants are correct that if Vázquez-Pagán had not met her burden of establishing a *prima facie* case of political discrimination then the burden of persuasion would not have fallen of defendants, based on the finding that she has the burden does shift to defendants to demonstrate that the same decision would have been made regardless of Vázquez-Pagán's political discrimination. To establish a Mt. Healthy defense it is not necessary for defendants to disprove that political animus was a motivating factor in the adverse employment decision, so long as they prove the same decision would have been made with or without the presence of discriminatory animus. Since defendants bear the ultimate burden of proof of persuading the jury on this issue, in order to demonstrate that that no reasonable jury could find for Vázquez-Pagán such that summary judgment must be granted notwithstanding Vázquez-Pagán's *prima facie* case they must point to specific facts in the record that establish the same decision would have been made. In this case, pointing out that the interview committee's recommendation sheet said that Arroyo-García "is recommended [*sic*] the person with the best score" and that she had a higher rank than Vázquez-Pagán on the Certification of Eligible Candidates list does not demonstrate that any reasonable jury would necessarily find in favor of defendants as to their Mt. Healthy defense. ECF No. 47-11, at 2. While the fact that the Interview Committee unanimously recommended Arroyo-García may assist defendants in convincing the jury that the same decision would have been reached regardless of defendants' animus, it does not compel such conclusion such that a reasonable jury

11

would have no choice but to find for defendants on the basis of their Mt. Healthy defense, particularly since it is uncontested that the Review Committee found that the August 3, 2012 Interview Committee lacked a duly authorized representative of the parents. Thus, while in addition to arguing that Vázquez-Pagán has not brought sufficient evidence to show that political affiliation was a substantial or motivating factor for the adverse employment actions defendants are of course entitled to argue their Mt. Healthy defense to the jury, the court is not in a position to grant summary judgment based on these issues from the evidence the parties have brought to the court's attention. For the reasons stated in this opinion and in the opinion entered on September 23, 2014 defendants' motion for reconsideration of the finding that Vázquez-Pagán established a *prima facie* case of political discrimination with regard to the August 3, 2012 interview process and defendants have not met their burden under Mt. Healthy is denied.

### B. Qualified Immunity[5]

The doctrine of qualified immunity protects defendants in their individual capacities from liability for money damages." Roldan-Plumey v. Cerezo-Suárez, 115 F.3d 58, 66 (1st Cir, 1997). To determine if a public official is entitled to qualified immunity, the court examines: "(1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue." Mihos v. Swift, 358 F.3d 91, 102 (1st Cir. 2004) (citation omitted).

Defendants' qualified immunity argument is that:

> [i]t has not been clearly established that [Vázquez-Pagán] was entitled to her lateral transfer request as a result of her child's medical condition. Also, there may have been other personal and

---

[5] Defendants' correctly point out that the court's opinion did not address their qualified immunity defense. ECF No. 63, at 3. Accordingly, this opinion contains an analysis of the argument for qualified immunity contained within their original motion for summary judgment.

12

> non-discriminatory reasons for co-defendants to prefer Arroyo-García. For example, co-defendant Borges-Rodríguez personally believed that Olga Arroyo was the best candidate to be the School Director of the Agustín Ortiz School since she has the qualities that said school needed. In addition, Borges Rodríguez has known her since around fifteen (15) years and believed she was the most dynamic and energetic individual that could provoke a transformation at the Agustín Ortiz School. Furthermore, he believed that she was a leader that has the character needed to more the school forward and at no time discriminated against [Vázquez-Pagán] due to her political affiliation or let himself be influenced by her political leanings. Thus, qualified immunity should attach to his actions. The same can also be said about Cintrón-González, who gave Plaintiff a score of 98 out of 100.

ECF No. 32. It appears that defendants "have misconstrued the legal question that is relevant to determining qualified immunity. The proper inquiry is whether the law on political discrimination was clearly established at the time that [d]efendants acted." Acevedo García v. Vera-Monroig, 213 F.Supp.2d 42, 50 (1st Cir. 2002). Whether or not Vázquez-Pagán was "entitled" to the School Director position at Agustín-Ortiz or defendants may have had non-discriminatory reasons for appointing Arroyo-García is not relevant to the qualified immunity analysis. This case is not about whether Vázquez-Pagán was entitled to a lateral transfer based on her child's medical condition; it is not a case about "reasonable accommodation." The central issue in this case is whether Vázquez-Pagán was politically discriminated against in her request to become Agustín-Ortiz's School Director during the August 2012 interview and selection process. Vázquez-Pagán has alleged facts that, if found by a jury to be true, would establish that defendants violated her First Amendment right to freedom of association and the First Amendment right not to be discriminated against is clearly established. See e.g., Cortés-Reye v. Salas-Quintana, 608 F.3d 41, 53 n. 13 (1st Cir. 2010); Vega Santana, et al. v. Trujillo Panisse, 547 F.Supp.2d 129, 141 (D.P.R. 2008); Rodríguez-Santana v. Comm. of Puerto Rico, Civ. No. 06-

13

1490 (SEC), 2007 WL 1437507, *4 (D.P.R. 2007); Rivera-Carrero v. Rey Hernández, Civ. No. 04-1935 (PG), 2006 WL 572349 (D.P.R. 2006).

The reason that plaintiff was denied the School Director position "is a disputed issue of material fact. Under such circumstances, a grant of qualified immunity is inappropriate." Costa-Urena v. Segarra, 590 F.3d 18, 29 (1st Cir. 2009) (citing Roure v. Hérnandez-Colón, 824 F.2d 139, 141 (1st Cir. 1987)); see also Flores Camilo v. Álvarez Ramírez, 283 F. Supp. 2d 440, 450 (D.P.R. 2003) ("[D]ue to the factual disputes regarding a possible political discriminatory motivation and the circumstances surrounding Defendant's personnel decisions, all of which are vital to this case as a whole and the Court's assessment of the qualified immunity defense in particular, the Court is not in a position to grant Defendant's motion for qualified immunity at this time."); and Irizarry-López v. Torres-González, 363 F. Supp. 2d 7, 10 (D.P.R. 2005) ("Whether and to what extent Ortiz's involvement in the employment decision was motivated by a discriminatory animus remains an issue in this case which the trier of fact, and not the Court, should decide. Accordingly, Ortiz's qualified immunity argument . . . should be denied given the factual underpinnings."); see also Rodríguez-Santana, 2007 WL at *4 ("We conclude that a reasonable official would understand that it is constitutionally impermissible to demote a government employee because of his exercise of a constitutional right to affiliate with a given political party.") Because of the issue of material fact as to whether the decision to award the School Director position at Agustín-Ortiz was motivated by politically discriminatory animus, defendants' request to dismiss Vázquez-Pagán's political discrimination claim on the basis of qualified immunity is denied.

### C. Article 1802

In its opinion entered on September 23, 2014, the court dismissed K.F.V.'s claim under Article 1802, citing case law which states that "[t]he tort claim of the relatives is dependent on the successful prosecution of a [Puerto Rico Law 100 of 1959 ("Law 100")] claim." ECF No. 56, at 31 (citing Baralt v. Nationwide Mut. Ins. Co., 183 F.Supp.2d 486, 488 (D.P.R. 2002). The court noted that because Vázquez-Pagán has not filed a claim pursuant to Law 100, K.F.V.'s Article 1802 claim cannot prevail. Id. Plaintiffs request that the court reconsider its ruling dismissing K.F.V.'s derivative Article 1802 claim, asserting that although such claims are often discussed in the context of Law 100, a relative may also bring an Article 1802 claims that is derivative from and contingent to a federal political discrimination pursuant to § 1983. ECF No. 65, at 2.

In support of their argument, plaintiffs cite to several cases in which spouses or relatives have pursued derivative tort claims under Article 1802 based on the § 1983 political discrimination claim of their relative or spouse. ECF No. 65, at 2 (citing Costa-Urena v. Segarra, 590 F.3d 18, 30 (1st Cir. 2010); Rodríguez-Ríos v. Cordero, 138 F.3d 22, 26-27 (1st Cir. 1998); and Cotto v. Municipality of Aibonito, Civ. No. 10-2241 (JAG), 2012 WL 1110177 (D.P.R. Apr. 2, 2012)). In Costa-Urena, the First Circuit Court of Appeals (the "First Circuit") stated that "a cause of action under Article 1802 'is wholly derivative and, thus, its viability is contingent upon the viability of the underlying employment discrimination claim." 590 F.3d at 30 (citation omitted). It made no distinction between employment discrimination claims under state and federal law, vacating a verdict rendered in favor of the spouse under Article 1802 "given the infirmity of the jury's verdict on the underlying political discrimination claim" pursuant to § 1983. Id. In Rodríguez-Ríos, the First Circuit reinstated derivative claims brought by a spouse

pursuant to Article 1802 based on its finding that the § 1983 claims of the employee must be reinstated. 138 F.3d 27. While neither of these cases explicitly address the question of whether an Article 1802 derivative claim is permissible where an employee pursues a political discrimination claim pursuant to § 1983 but does not sue under Law 100, they are persuasive to suggest that it is.

Additionally, plaintiffs cite to Pagán Colón v. Walgreens of San Patricio, Inc., in which the Supreme Court of Puerto Rico entertained the following question certified to it by the First Circuit: "When an employee's Article 1802 claim is barred because there is a specific federal statutory employment claim, here the [Family Medical Leave Act "FMLA"], does the spouse of the employee nevertheless have a cause of action for emotional damages under Article 1802 when such relief is not available to the employee under federal law?" ECF No. 65-1, at 1. The Supreme Court of Puerto Rico answered in the negative, reasoning that the FMLA does not provide for emotional damages to the principle plaintiff and thus the relative is not entitled to such damages in a derivative claim pursuant to Article 1802. Id. at 6. While the holding of the case itself is not applicable to the matter at issue in the case of caption, the reasoning employed by the Supreme Court of Puerto Rico strongly suggests that a derivative cause of action pursuant to Article 1802 may be pursued where a relative or spouse has brought a claim on the basis of a federal statute. To that effect, it stated "if the United States Congress had instead provided that the FMLA would allow for the award of such damages to aggrieved employees . . . our answer would have necessarily been in the affirmative."[6] Id. at 7. As with the First Circuit cases discussed above, Pagán Colón is strongly persuasive to suggest that a relative may bring a derivative claim under Article 1802 where the aggrieved employee has sought relief for alleged

---

[6] In contrast to the FMLA, emotional damages are recoverable in § 1983 political discrimination lawsuits. See Méndez-Soto v. Rodríguez, 448 F.3d 12 (1st Cir. 2006).

political discrimination under § 1983, but has not brought a Law 100 claim, meriting reconsideration of the court's prior decision on this matter. Accordingly, the decision dismissing K.F.V's Article 1802 claim without prejudice is vacated and the claim is reinstated.

### III. CONCLUSION

Based on the foregoing analysis, defendants' motion for reconsideration (ECF No. 63) is denied and plaintiffs' motion for reconsideration (ECF No. 65) is granted. In light of this opinion and order, as well as the opinion and order entered on September 23, 2014 (ECF No. 56), all claims against defendants in their official capacities are dismissed with prejudice, all K.F.V.'s § 1983 political discrimination claims against defendants are dismissed with prejudice, Vázquez-Pagán's § 1983 political discrimination claim against defendants with respect the December 14, 2012 interview and selection process is dismissed with prejudice, and Vázquez-Pagán's Article 1802 claim is dismissed with prejudice. Vázquez-Pagán's § 1983 political discrimination claim against defendants with respect the August 3, 2012 interview and selection process and K.F.V.'s derivative claim pursuant to Article 1802 related to said interview and selection process survive.

IT IS SO ORDERED

In San Juan, Puerto Rico, this 16th day of October, 2014.

s/Marcos E. López<br>U.S. Magistrate Judge